## EATON VS. NORTH.

TAX DEED: *Earlier one cut off by a later one.—Grantee of tax deed, not in possession, may abandon all claim under that and take a deed under subsequent sale.*

1. A sale of land upon a junior levy and assessment of taxes cuts off an earlier tax deed.
2. The party holding a junior tax deed (not being in possession under it) is under no greater obligation to pay taxes thereafter assessed upon the land than one holding an earlier deed.
3. One who holds a tax deed, whether valid or void, under which he has not gone into possession, may abandon all claim of title under it, and acquire title under a deed for taxes assessed upon the land *after* he took such earlier deed.

ERROR to the Circuit Court for *Calumet* County.

Action to recover possession of land, tried by the court without a jury, June 23, 1870. The evidence consisted principally of the deeds under which the parties claimed, the dates and character of which sufficiently appear in the findings of the circuit judge, and in the opinion of Judge COLE.

The findings of the court are as follows:

1. That the land described in the complaint was sold for the non payment of taxes, by the county of Brown, in the year 1840.  2. That said land was deeded by said county of Brown to H. Eugene Eastman on the 20th day of May, 1852, but said deed did not contain the name of the purchaser at the sale.  3. That on the 31st day of December, 1867, a tax deed for said land was issued to H. Eugene Eastman, founded on said sale, which was recorded in Calumet county on the 6th day of February, 1868; and that on the 18th day of October, 1868, the said Eastman did execute and deliver to said plaintiff a quitclaim deed of said land.  4. That on the 23d day of May, 1849, a tax deed of said land, founded on a sale made in 1846, was issued by the clerk of the board of supervisors of said county in his official capacity, sealed with the seal of said board, but not with his private seal, in which he granted said land in the

name of the state of Wisconsin, but neither the state nor the county is named as a grantor, and which deed was delivered to one Luther Haggedon on said day; and that on the 15th day of March, 1850, said Haggedon executed and delivered to Albert D. Cotterel his quit-claim deed of the same; and on the second day of April, 1853, said Cotterel conveyed the same by warranty deed to said defendant. 6. That on the 18th day of May, 1863, the clerk of the board of supervisors of Calumet county did make and deliver to said defendant a tax deed of said land, founded on the sale of April 11, 1854, for tax of 1853. 7. That on the 12th day of January, 1869, said clerk did execute and deliver to said defendant a tax deed of said land, founded on the sale of 1865, for taxes of 1864. 8. That in 1864, said land was assessed to said defendant.

As a conclusion of law, the court held that the plaintiff was not entitled to recover.

Judgment accordingly; which the plaintiff seeks here to reverse.

*R. P. Eaton*, plaintiff in error, in person, argued that the tax-deed under which he claimed was valid, because the law in force in 1840 was repealed by the statutes of 1849 and 1858, and Ch. 22, laws of 1859, making all taxes and charges a lien upon the land until paid, entered into the contract of sale, and the right of the holder to a deed on demand after three years could not be cut off by subsequent legislation, citing *Robinson v. Howe*, 13 Wis., 341; Blackwell on Tax Titles, 350-1; that the lien continued a charge on the land, citing Angel on Limitations, §§ 73, 92 and 173; Story's Equity Ju., § 516; Story on Contracts, 179; Wharton's Law Dic., 577-579; 1 Hilliard on Mortgages, 467-475 and n., 617; 1 Hilliard on Real Property, 475; that the statute of limitations does not run against a lien, citing 2 Barr (Penn.) R. 224; 2 Parsons on Contracts, 370 and cases cited; *State ex rel. White v. Winn*, 19 Wis., 304. He also argued that the tax deed to Haggedon was insufficient as evidence of title, and invalid, citing *Bridge v. Bracken*, 3 Chand., 75; *Edger-*

ton v. *Bird*, 6 Wis., 527 ; *Eaton v. North*, 20 Wis., 449 ; *Sturte-* *vant v. Mather*, id., 576 ; and that the defendant, being the owner of the land in 1853 and in 1864, the purchase of the certificate of sale for the taxes of those years operated merely as a payment of the taxes, and his tax deeds were therefore void, citing *Smith* *v. Lewis*, 20 Wis., 350 ; *Bassett and wife v. Welch*, 22 Wis., 175.

COLE, J.  The plaintiff claimed the right to the property upon the strength of his title, derived through the tax deed to Eastman.  The case shows that this deed was given upon a tax sale made in 1840.  The defendant, to defeat a recovery, relied, among other things, upon the tax deed executed to him May 18th, 1863, and founded on a tax sale made in 1854.  Now, the doctrine is well settled that a junior levy and assessment of taxes, and a sale upon such assessment, effectually cuts off and destroys any earlier tax deed.  It is evident then that the tax sale of 1854 destroyed the title derived through the earlier sale of 1840.  But it is insisted that the tax deed given the defendant on the sale of 1854 is void, because the defendant was then the owner of the land, and bound to pay the taxes assessed upon it.  But the evidence contained in the bill of exceptions utterly fails to show that the defendant owned the land in 1853 or 1854, and was under obligation to pay the taxes.  The evidence shows this state of facts:  A tax deed of the lands to one Luther Haggedon, dated the 23d of May, 1849, founded upon the tax sale of 1846 ; a deed from Haggerdon to Albert Cotterel dated March 15, 1850 ; and a warrantee deed from Cotterel to the defendant, dated April 2d, 1853, and recorded May, 1853. It therefore appears that all the interest which the defendant had in the land in 1853, was derived through the tax deed given to Luther Haggedon.  Now the defendant, claiming through a tax deed granted on a subsequent tax sale, was under no higher duty to pay the taxes than the party claiming under the tax sale of 1840.  The defendant might abandon all right under the Haggedon tax deed, and acquire a new tax

deed.   At least we know of no principle of law which would prohibit him from doing this.   And it seems he did take a tax deed on the sale of 1854.

Furthermore, it is insisted by the plaintiff that the tax deed executed to Haggedon was absolutely void because neither the state nor the county were named as grantors therein.   If this position is sound, and we do not deem it very material to determine whether it is or not, then it is very evident that the defendant acquired no title whatever under that deed.   In this view there is no possible reason for saying that he was the owner of the property when the tax for 1853 was assessed, and therefore bound to pay the taxes for that year.   But, even if the tax deed to Haggedon was not void for the objections taken to it by the plaintiff, still the defendant might abandon all rights under that deed and acquire a new tax deed.   And this it seems he did do when he took the tax deed founded upon the sale of 1854.   We therefore see no valid reason for holding that the defendant cannot hold the land under the tax deed issued on the junior sale.   For there is no evidence in the case to show that he had any other interest in the land when the tax for 1853 was assessed, than what he acquired through the tax deed executed to Haggedon, and this interest he might abandon.   If it appeared that he was in possession in 1853, it might with some reason be claimed that he went into possession under the Haggedon deed, and was bound to pay the taxes assessed for 1853 against the property.   But this fact is not established by the evidence.   Indeed it does not appear when the defendant took possession, though we may assume that he was in possession in 1864, since the lands were assessed to him that year.   On this record we see no reason for disturbing the judgment.

*By the Court.*—The judgment of the circuit court is affirmed.